wIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA A. B,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-2136-DGW[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability benefits in June 2014, alleging disability as of June 6, 2014. After holding an evidentiary hearing, an ALJ denied the application on August 4, 2017. (Tr. 13-23). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 12 & 20.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to consider all of the evidence in evaluating plaintiff's ability to lift, handle and finger.

2. The ALJ erred in assessing the reliability of plaintiff's allegations.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the

burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB only through December 31, 2017.

The ALJ found that plaintiff had severe impairments of status post-bilateral carpal tunnel release, hypertension, idiopathic peripheral neuropathy, and plantar fasciitis.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to occasional operation of foot controls bilaterally; no climbing of ladders, ropes, or scaffolds; occasional postural activities; and frequent handling and fingering bilaterally.[3]

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was able to do her past work as a housekeeper.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1963 and was about to turn 54 years old on the date of

---

[3] Handling is "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." Fingering is "picking, pinching, or otherwise working primarily with the fingers." SSR 85-15, 1985 WL 56857, at *7.

the ALJ's decision. (Tr. 234). A prior claim was denied by a different ALJ on June 5, 2014. There is no indication that plaintiff sought judicial review. (Tr. 98-115). Her current alleged date of onset is the day after the previous denial.

Plaintiff said she stopped working in July 2012 because of her condition. She worked as a hotel housekeeper from 1994 through July 2012. (Tr. 238-239).

In a Function Report submitted in September 2014, plaintiff said she could not work because she could not use her hands to lift, pull, and push because she could only lift up to twenty pounds. She could not stand or walk for long distances because of neuropathy in her feet. She was always depressed. On a typical day, she got her child up for school, tried to clean and dust the house, watched TV and spent time with her family. She soaked her foot and exercised her hands and fingers. She wore a brace/splint as needed. She could walk or stand for thirty minutes. She said she had trouble using her hands and dropped things. (Tr. 257-262).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in June 2017. (Tr. 31).

Plaintiff said her hands, feet, and depression had gotten worse since the denial of her prior application. (Tr. 40). She had carpal tunnel surgery in 2011, and went back to work, but her hands would swell up and she could not do the work. (Tr. 43). She said the most she could lift was fifteen to twenty pounds. (Tr. 45).

A vocational expert (VE) testified that a person with plaintiff's RFC could do her past work as a housekeeper. If plaintiff were limited to less than frequent fine and gross manipulation bilaterally, she would not be able to do that job or any other unskilled job at the light exertional level. The ALJ acknowledged that plaintiff would be deemed disabled under the Grids if she were limited to sedentary work. (Tr. 57-58).

3.  **Relevant Medical Records**

In November 2013, an EMG and nerve conduction study was normal. (Tr. 555-556).

In February 2014, Dr. Mazhar Lakho, plaintiff's primary care physician, diagnosed plantar fasciitis. A foot specialist, Dr. Eric Whittenburg, diagnosed plaintiff with peripheral neuropathy that same month. (Tr. 722-723).

In April 2014, she complained to Dr. Lakho of cramping in her hands and dropping things. She also had foot pain. She wanted the doctor to fill out a form for disability. He noted no positive findings on exam. Plaintiff was taking Effexor, gabapentin, Tramadol, and a blood pressure medication. Dr. Lakho reviewed the EMG study with plaintiff and recommended that she see a hand specialist. (Tr. 579-580). In August 2014, she told him that gabapentin and Tramadol were helping with her pain. She said her hands were cramping up. He recommended that she continue on the same medications and use an exercise ball with her hands. (Tr. 575-576).

Dr. Vittal Chapa examined plaintiff at the request of the agency in October

2014. She had no muscle atrophy in her hands. Hand grips were full. She could perform fine and gross manipulations. She could appreciate pinprick sensations in both upper and lower extremities. (Tr. 599-601).

Plaintiff began seeing Dr. Prieb, a hand surgeon, in August 2014. She complained of bilateral hand pain and numbness. He noted the normal nerve conduction study. He offered her a Kenalog injection in September, but she refused. In November 2014, his impression was recurrent carpal tunnel syndrome, worse on the right. She agreed to a Kenalog injection into the right carpal tunnel. The next month, she reported that the pain and numbness in her right hand was almost gone. Exam showed only mildly positive Phalen's sign on the right and negative Tinel sign. (Tr. 650-651). In June 2015, she complained of numbness and tingling in both hands. She wore splints off and on, but said they were uncomfortable. The impression was possible recurrent bilateral carpal tunnel syndrome. Dr. Prieb gave her an injection on the left. (Tr. 668). In August 2015 she said the injection helped. She did not want another injection on that visit. (Tr. 677).

Plaintiff began seeing Dr. Krummenacher, an orthopedic surgeon, for bilateral hand pain in January 2016. She told him that she had numbness and tingling. She also said she had peripheral neuropathy and she was unsure of the cause. Exam showed diminished sensation to light touch in the middle three

digits, more on the right than the left, and moderate thenar wasting bilaterally.[4] The doctor wanted to review the operative records. In February 2016, Dr. Krummenacher wrote that it appeared that the carpal tunnel surgeries had been performed in a correct manner. He noted the negative nerve conduction studies. X-rays of the wrists were normal. He assessed bilateral carpal tunnel syndrome. He wrote, "It is not unusual for a patient to have residual symptoms despite release of the carpal tunnels. To complicate matters, the patient has peripheral neuropathy with the source unknown." Her neuropathy was being managed by her primary care doctor. Dr. Krummenacher recommended that she do activities as tolerated and apply ice. He suggested that she discuss a referral to a neurologist with her primary care physician. (Tr. 670-674).

Dr. Charles Ampadu became plaintiff's primary care provider in July 2015. Her exam was normal. He continued her on the same medications that had been prescribed by Dr. Lakho, including gabapentin and Tramadol. (Tr. 686-689). In August he prescribed Norco instead of Tramadol for carpal tunnel symptoms. (Tr. 690). Dr. Ampadu saw her again in March, May, and July 2016. Her complaints and pain medication were unchanged. In September 2016, Dr. Ampadu diagnosed arthritis and added an anti-inflammatory medication. There were no notes of physical exams at any of these appointments. In December 2016 and

---

[4] Thenar refers to "the fleshy part of the hand at the base of the thumb." https://medical-dictionary.thefreedictionary .com/thenar, visited on August 28, 2019. The thenar muscles are the "intrinsic muscles of the thumb" and allow for "precision pinching" and "power gripping." https://www.ncbi.nlm.nih.gov/pubmed/22117918, visited on August 28, 2019.

March 2017, physical exam was normal, and her pain medications were continued. (Tr. 703-720).

## Analysis

Plaintiff's first point is well-taken in that the ALJ ignored evidence of thenar wasting and misstated Dr. Krummenacher's notes.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The ALJ pointed out that Dr. Chapa found no muscle atrophy in October 2014. (Tr. 19). He ignored the fact that Dr. Krummenacher found moderate thenar wasting bilaterally in January 2016. While he acknowledged that Dr. Krummenacher found diminished sensation in the middle three digits of both hands, he incorrectly said it was worse on the left, rather than on the right. And, the ALJ did not mention that the doctor found positive median nerve compression test and positive Tinel's at the cubital tunnel. Lastly, the ALJ mischaracterized Dr. Krummenacher's suggestion of a neurology referral. According to the ALJ, a "neurology referral [was] suggested but not pursued by the claimant." (Tr. 19). Again, at Tr.22, the ALJ said there had been "failure to follow-up with specialists as directed." Dr. Krummenacher actually wrote. "I discussed with the patient that a referral to a neurologist may be beneficial, but I will allow the patient to discuss this with her primary care physician." (Tr. 674).

Dr. Krummenacher's notes support plaintiff's allegation that she continues to have numbness and difficulty using her hands even after the carpal tunnel surgery and despite the normal nerve conduction study in November 2013.

Defendant argues that the findings of thenar wasting and positive median nerve compression test were insignificant because Dr. Krummenacher did not repeat the findings at the second visit and did not assign any limitation to plaintiff. He argues, "Plaintiff's lay hypothesizing about the significance of this evidence does not provide proper grounds for remand." Doc. 29, p. 11.

The ALJ did not say that he discounted thenar wasting and the positive median nerve compression test because the doctor did not repeat those findings at the second visit. The ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. *Hughes v. Astrue*, 705 F.3d 276, 279(7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the Chenery doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision...."). Further, it makes no sense to suggest that moderate thenar wasting was no longer present at the second visit; the second visit was only one month after the first. And, the Commissioner's argument ignores the fact that the ALJ found it significant that Dr. Chapa found no muscle atrophy. This calls into doubt the Commissioner's suggestion that moderate wasting was so insignificant that it could be ignored.

Plaintiff's ability to use her hands is a crucial issue in this case. The agency

defines occasional as "occurring from very little up to one-third of the time." Frequent is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6. The ALJ found that she could handle and finger with both hands frequently. The VE testified that, if plaintiff were limited to less than frequent fine and gross manipulation bilaterally, she would not be able to do her past job or any other unskilled job at the light exertional level. As the ALJ acknowledged, if plaintiff were limited to sedentary work, at her age she would be deemed disabled under the Grids if she were limited to sedentary work. See, Medical-Vocational Guidelines ("Grids") 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

Defendant's complaint about plaintiff's "lay hypothesizing" about the significance of the thenar wasting and continuing carpal tunnel symptoms is ironic in that it is the ALJ who had the responsibility of assessing her RFC, and he is prohibited from determining the significance of medical findings for himself. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

Plaintiff's point about the credibility findings is meritorious for the same reason.

SSR 96-7p, applicable here, requires the ALJ to consider the entire record, and to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2016 WL

1119029 at *7.

The ALJ's ignoring of pertinent medical evidence necessarily impacted his assessment of plaintiff's credibility.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that the ALJ failed to build the requisite logical bridge here.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: August 29, 2019.**

**DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE**